### BENJAMIN PARKER *vs.* THE BOSTON & MAINE RAILROAD.

If the owner of land, with buildings standing thereon, situated near the track of a railroad, but not crossed thereby, sustain any actual damage, capable of being pointed out, described and appreciated in such estate, in consequence of and as incident to the construction of the railroad, he will be entitled to recover compensation therefor, against the proprietors of the railroad, in the mode provided by the Rev. Sts. *c.* 39, § 56.

If, in consequence of the excavation made for a railroad, the water of a well on an estate adjoining but not crossed by the railroad, is drawn off and the well thereby rendered dry and useless, the owner of such estate will be entitled to recover damages therefor, in the same manner as for land, &c., taken for the railroad.

The obstruction of a private way, in consequence of the construction of a railroad across the same, is a proper subject for damages, within the Rev. Sts. *c.* 39, § 56.

Where, in a petition for damages occasioned by the taking of land, &c., for the construction of a railroad, several distinct causes of damage are alleged, and a general verdict is returned, if one or more of such causes be not proper subjects of damage, it is not to be presumed, in the absence of any instruction by the sheriff relative to the same, that the jury gave any damages therefor.

A railroad corporation is estopped from denying, that a portion of the structure of their road, built at the same time with and as a part of it by their officers, engineers and contractors, is authorized by their act of incorporation; and any person, entitled to recover for damages occasioned by such structure, has a right to assume, that in making the same the corporation acted in pursuance of their charter, and to have his equitable remedy for damages under the statute, (Rev. Sts. *c.* 39, § 56,) instead of treating the officers, engineers and contractors of the corporation as trespassers.

A bridge, with lateral embankments, erected by a railroad corporation for the

Parker v. The Boston & Maine Railroad.

purpose of raising a highway and carrying it over their road, is as much a part of the structure authorized by their charter, as the railroad itself; and any person injured by the erection of such bridge and embankments, is entitled to recover his damages thereby occasioned, in the manner provided by the Rev. Sts. c. 39, § 56.

A claim for damages being made against a railroad corporation, on the ground of the erection by them of a bridge and embankments, as a part of the structure of their road, for the purpose of raising and carrying a highway over the same; and the respondents objecting to the claim, that they had not taken the requisite preliminary steps, and consequently were not authorized to erect the bridge and embankments; it was held, that the objection was one which the respondents had no right to make.

In order to authorize a railroad corporation, under the provisions of the Rev. Sts. c. 39, §§ 67, 68, to raise or lower any way, it is not necessary that a previous agreement therefor should be made with the selectmen of the town, in which such way is situated, or that there should be a previous determination of the county commissioners, as to whether any and what alteration should be made. The railroad corporation are first to give notice to the selectmen of their intention to raise or lower the way in question : the selectmen are then within thirty days to notify the corporation of the alterations, if any, which they require; if the selectmen and the corporation shall not agree what alterations are necessary, application may be made by either to the county commissioners, to determine the same; and if selectmen give no notice to the corporation as to what alterations they require, the presumption is that they require none, but leave the whole matter to the corporation.

In order to entitle the abutters on a highway, which has been raised or lowered by a railroad corporation, under the provisions of the Rev. Sts. c. 39, §§ 67, 68, to recover the damages therefor, to which they may be entitled, if any, it is not necessary that the selectmen of the town should have either authorized or directed such alteration to be made.

The remedy, for an injury occasioned by the alteration of a highway, for the purpose of raising or lowering the same, by a railroad corporation, is not by an action against the town under the Rev. Sts. c. 25, § 3, but by a proceeding against the corporation for damages, under the Rev. Sts. c. 39, § 56.

THIS was an appeal from an adjudication of the court of common pleas, setting aside the verdict of a sheriff's jury, upon the petition of Benjamin Parker against the Boston and Maine Railroad, for damages sustained by the petitioner, in consequence of the location and construction of the respondents' road.

The petitioner, on the 1st of November, 1845, presented his petition to the county commissioners of Middlesex, in which he represented and averred : —

That he was the owner of a certain lot of land, with the buildings thereon standing, situated in Charlestown, and containing about two acres, bounded south-westerly on Perkins-

street, south-easterly on land of Richard Sullivan, north-easterly on the Winter Hill road, and north-westerly on the boundary line of the town of Somerville, and land of Lucinda A. Underwood and others : That the Boston and Maine Railroad Extension Company had recently laid out, located and constructed their railroad near the south-easterly boundary of the petitioner's land : That they had also constructed a bridge over the Winter Hill road, where the railroad crosses it, and within a few feet of the petitioner's land, where the same bounds on the Winter Hill road, and had raised the bridge above the former grade of the road, in order to allow the passage of locomotive engines and cars under the same ; and, in order to allow the travel on the Winter Hill road to pass over the bridge, had filled up the road on either side of the bridge, and had raised the grade far above the former level thereof, more especially on the north-westerly side of the bridge ; and, in thus filling up and raising the grade of the road, had made a high embankment in front of the petitioner's land, where it bounds on the Winter Hill road : That, by means of the filling up and grading the road, and making the embankment as above stated, the access to the petitioner's land from the road was greatly impaired, injured, and cut off : That, on the petitioner's premises above described, and near his dwelling-house, there was a well, the water of which had been drawn off, and which had become dry and useless, in consequence of the depth of the excavation made by the company, in constructing their railroad near the south-easterly boundary of the petitioner's land : That the petitioner had always theretofore passed and repassed to and from his premises over Perkins street, leading from his estate to the Cambridge road, he having a right of way in said street ; that the company had located their road across Perkins street, and, in constructing the same, had dug down, lowered and excavated that street, so that the passage over it had become difficult, dangerous, and unsafe : That, by means of all these acts and doings of the railroad company, the petitioner's estate was greatly injured and damaged, and the value thereof greatly

diminished and lessened, and the petitioner prevented from occupying, improving and enjoying his estate, as he previously might and was accustomed to do : Wherefore the petitioner prayed the commissioners, after due notice to the railroad company, to view the premises and estimate the damages sustained by him by reason of the laying out, location, and maintaining of the railroad, and by reason of the acts and doings of the company in the premises.

On this petition, after notice to the respondents, the commissioners proceeded, on the 2d of December, 1845, to view the premises ; and at their meeting in January following, made and returned an estimate of the damages sustained by the petitioner, who, being dissatisfied therewith, filed his petition for a jury at the same meeting.. The commissioners ordered the petitioner to give the respondents notice of his application for a jury, and, on the 4th Tuesday of March following, notice having been given according to their order, the commissioners directed the clerk to issue a warrant for a jury.    The respondents, also, being dissatisfied with the estimate, presented a petition for a jury, at the meeting in March, upon which the commissioners ordered a warrant to issue.

Pursuant to these orders, the clerk issued two warrants ; one dated the 14th of April, and the other the 18th of June, 1846.    In the first, which was issued upon the application of the petitioner, the sheriff was directed to summon a jury " to consider and estimate the damages done to the petitioner named in said petition, by reason of the location of the Boston and Maine Railroad over his land aforesaid." In the other warrant, issued at the request of the respondents, the subject of the inquiry by the jury was described as " the damages done to Benjamin Parker, named in said petition, by the locating and constructing their said railroad, as in a former petition of the said Benjamin Parker is described."

The warrants were both executed at the same time, as one, on the 18th and 19th of June, 1846, and returned by the sheriff, together with the verdict of the jury, and a certificate of his rulings and instructions, to the court of common pleas to the next September term.

The verdict, by which the petitioner's damages were assessed at two hundred dollars, was set aside by the court of common pleas, and the petitioner thereupon appealed to this court.

In the course of the trial, the sheriff was requested by the respondents to instruct the jury: 1st, That the building of the embankment on the Winter Hill road, as alleged in the petition, was not an injury to the land fronting on that road, occasioned by the laying out, making, or maintaining of the railroad; 2d, That the respondents had no authority, under their charter, to build the embankment in question, unless the same was required or assented to by the selectmen of Charlestown; and, it being admitted, that the selectmen had been duly notified by the respondents, and there being no evidence that they had either authorized or agreed to the building of the embankment, the respondents also requested the sheriff to instruct the jury, 3d, That if the selectmen neither authorized nor directed it to be built, the respondents were not liable for the damages thereby occasioned to the abutters on the Winter Hill road. But the sheriff declined giving the instructions as requested.

*J. Dana*, for the petitioner.

*R. Choate* and *T. Farrar*, for the respondents.

Shaw, C. J.* It was admitted in the argument, that the respondents' railroad did not pass over any part of the petitioners' land, though the fact is incorrectly so stated in the warrant to the sheriff. Both parties applied to the commissioners for a jury to revise the assessment of damages, and upon these applications two distinct warrants were issued. The sheriff very properly consolidated the two, and returned them with a single verdict applicable to both. Perhaps it was proper for the clerk to issue two distinct warrants, in order that if one party should fail to take out his warrant and proceed upon it, the other party might nevertheless proceed upon his. On the warrant taken out by the respondents, the

---

* Wilde, J., and Fletcher, J., did not sit in this case.

jury are to " estimate the damages done to Benjamin Parker, named in said petition," that is, the petition for a jury, " by the locating and constructing their said railroad, as in a former petition of the said Benjamin Parker is described." This reference, perhaps, to the original petition, is in terms sufficiently definite to make it part of the warrant, so far as to show what was the subject of the complaint and the nature of the damages sought to be recovered.

The petitioner sets forth, that he was the owner of certain land and buildings in Charlestown, bounding on one side on the Winter Hill road; that the Boston and Maine Railroad Extension Company (now the Boston and Maine Railroad) constructed their road near the boundary of his land, and built a bridge across the Winter Hill road, where it crosses the same, and raised the bridge above the former grade of the road, for the purpose of passing under the same, and filled up the road in order to pass over the bridge on either side, and raised the grade and made a high embankment in front of his land, by means whereof the petitioner's access to his land from the Winter Hill road was greatly impaired, injured and cut off; that the respondents, in excavating for their road, dug so deep as to drain a well on the petitioner's premises, which has in consequence become dry and useless. The petitioner further avers, that he was previously accustomed to pass and repass over Perkins street, he having a right of way there; that the respondents located their road across that street, and in constructing the same, had dug down and excavated the street, so that the passage over it had been rendered difficult, dangerous and unsafe. By means of all which acts, the petitioner alleges that his estate has been greatly injured, the value thereof diminished, and his enjoyment of the same impaired.

The sheriff was requested by the respondents to instruct the jury, that the building of an embankment on the Winter Hill road, as alleged in the petition, was not an injury to the land fronting on the road, occasioned by the laying out, making or maintaining of the railroad. This instruction the

sheriff declined to give. If the object of the instruction was to direct the jury that such embankment did no damage to the plaintiff's land, this was a pure question of fact, which they were summoned to try, and the sheriff was not called upon, nor was it within his proper province, to give such instruction.

But if it was intended to ask the sheriff to instruct the jury, that though such an embankment along the public highway leading to the bridge over the railroad did some damage, it was not a kind of damage for which the respondents were liable, as we suppose from the argument was intended, then such proposed instruction presents the main question in the present case. That question is, whether a party having land with buildings thereon, lying near the track of a railroad, but not crossed by it, can recover compensation for incidental damage caused to his land, by the construction of the railroad and the structures incident to and connected with it.

The language of the general railroad act, Rev. Sts. *c.* 39, § 56, is very broad, declaring that "every railroad corporation shall be liable to pay all damages that shall be occasioned by laying out and making and maintaining their road, or by taking any land or materials, as provided in the preceding section."

This is a remedial provision, and to be construed liberally to advance the remedy. It is made in the spirit of the declaration of rights, giving compensation to persons sustaining damage for the public benefit. Whatever this provision, by its true construction, declares that the party damnified shall receive, the company, by accepting a railroad charter, bind themselves to pay.

The terms of the section must include damages which are caused by something else besides taking land and materials, because damages of that kind are distinguished from the former by the word "or." So the word "occasioned" points to any damage, which may be directly or indirectly caused by the railroad. We are of opinion, therefore, that a party who sustains an actual and real damage, capable of being

10 *

pointed out, described and appreciated, may sue a complaint for compensation for such damage; and we think that this point is settled by authority. *Dodge* v. *Essex*, 3 Met. 380; *Ashby* v. *Eastern Railroad Company*, 5 Met. 368. This question, we think, is not affected by the rule of law laid down in the case of *Callender* v. *Marsh*, 1 Pick. 418, that an abutter on a highway cannot obtain damages for raising or lowering the grade of the highway. That was founded on the ground, that the public had originally paid a full compensation for all damage to be done by them to the adjacent owners, by any reasonable or convenient mode of grading the way; and the rule has been altered by statute since. But were it otherwise, it would not have governed or affected this case. We think the language of this statute is broad enough to include all actual damages occasioned by laying out and fitting a railroad for use.

And so in regard to the well. The claim for damages on this ground does not depend on the relative rights of owners of land, each of whom has a right to make a proper use of his own estate, and sinking a well upon it is such proper use; and if the water, by its natural current, flows from one to the other, and a loss ensues, it is *damnum absque injuria.* But the respondents did not own land; they only acquired a special right to and usufruct in it, upon the condition of paying all damages which might be thereby occasioned to others.

In regard to the allegations respecting Perkins street, it does not appear whether that street was a public or private way; and the sheriff was not asked to direct the attention of the jury to this distinction. If it was a private way, and the description in the petition would apply to either, the statute gives damages therefor, (Rev. Sts. *c.* 39, § 71,) by implication, by providing that the application for such damages shall be made within one year. It does not appear, that this application was not made within one year; but if it was not, the attention of the sheriff should have been drawn to it, and the respondents should have relied upon the limitation in the statute as a bar.

But if these grounds, or either of them, were not a proper subject of damage, we are not to presume, in the absence of any instruction, that the jury gave damages for them.

But it is insisted, that if either was wrong, the verdict must be set aside, as in cases of several counts in a declaration, where general damages are assessed, and one count is bad, and it cannot be set right by the judge's minutes. But that is a rule strictly applicable to actions, and there is but a remote analogy between the cases to which it applies and the present case. This is a single claim for damages, with several specifications, and is much more like a common money count under which several promissory notes are given in evidence, and a general verdict rendered thereon. In such a case, the judgment could not be arrested, by showing that some one of the notes so given in evidence was defective.

But the next general ground of exception is, that this bridge and embankment along the Winter Hill common road, and over the railroad, were made by the respondents, without authority derived from their act of incorporation ; that these acts were unauthorized ; and that, if the plaintiff has any remedy therefor against any body, it is not by a claim for damages against the respondents.

If this bridge and embankment were made at the same time that the railroad was made, by the officers, engineers, and contractors of the respondents, we think they are estopped from denying that they acted by competent authority. This mode of proceeding indicated clearly enough that they professed to act under the authority of their acts of incorporation ; and we think that the individual proprietor had a right to assume that they so acted, and have his equitable remedy for damages, instead of treating the officers, engineers and contractors of the company as trespassers.

But upon this point, it appears to the court, that the respondents acted in conformity with the provisions of their charter. Recurring to the railroad act, Rev. Sts. *c.* 39, it is provided in § 66, that if any railroad track shall be so laid out as to cross any turnpike road or other way, it shall be so

made as not to obstruct such turnpike road or way. Then how, by whom, and in what manner, shall this adaptation to the old road be made? Equity would answer, plainly enough, that it is not required to be made for the benefit of the turnpike company, or of the town ; it is an inconvenience to which they are subjected for the benefit and accommodation of the railroad, to which it is essential that it should be kept on a certain grade, whereas the grade of a turnpike or common road may be changed, though with some inconvenience. But the statute does not leave it to implication. The next section (§ 67) declares that every railroad corporation may raise or lower any turnpike or way for the purpose of having their railroad pass over or under the same ; the mode we shall refer to afterwards.

The statute, having thus declared that railroad corporations may raise or lower a highway, provides further (§ 72), that every railroad company shall maintain and keep in repair all bridges with their abutments, which such corporation shall construct over or under any turnpike road, canal, highway or other way. These provisions apply to the original laying out and construction of the railroad ; and there are other provisions of the general act, and also of subsequent acts, as the act of 1842, *c.* 22, which apply to cases where, after the original laying out and construction of the railroad, alteration in ways becomes necessary.

All these provisions are parts of one act, to be taken and construed together as one system of rules ; and hence it appears, that the raising of a common road, with an embankment of sufficient length on each side to form an easy slope to a high bridge, is a part of the franchise given by the charter, as much as the right to take private property, or to pass over navigable waters. These bridges, and the embankments extending laterally from, are as much a part of, the structure authorized by the charter, as the railroad itself. This brings the case of one damnified by such structure within all the reasons and within all the provisions which give compensation for damages occasioned by the laying out, making and maintaining of the railroad.

But the respondents further insist, that this bridge and these embankments were made without authority, because the respondents had not first agreed with the selectmen, or applied to the county commissioners to determine, what alterations were necessary.

This is an objection, we think, which the respondents have no right to make. If they, as against third parties, were allowed to set up their own violations of the plain duties, which by their charter they have taken upon themselves to perform, and to rely upon such violations to defeat others of their rights, they would be taking advantage of their own wrong. But for the railroad charter, and the authority vested in the company by it, this structure and embankment upon the common highway would be plainly a public nuisance, for which an indictment would lie.

But the sixty-eighth section, respecting the agreement of the parties, or, in case of their disagreement, the order of the county commissioners, is to be taken in connection with § 67, before cited. This latter section declares the right of the company to raise the grade of the highway to the bridge ; it is an absolute right, not depending upon the consent of selectmen or county commissioners ; and the reference to these officers in § 68 does no more than prescribe the terms. The sixty-seventh section provides, that before proceeding to make any alteration in a highway, the railroad company shall, in writing, notify the selectmen; and the selectmen, within thirty days, shall, in writing, notify the company of the alterations, if any, which they may require to have made. Then comes § 68, which provides that if the parties shall not agree what alterations are necessary, either party may apply to the county commissioners, who shall thereupon determine whether any and what alterations shall be made, and that their decision shall be final.

It is contended, upon these provisions, that alterations in a highway are unauthorized, unless there be an express agreement of the company and the selectmen, or an order of the county commissioners.

But we do not so understand this statute. The first act is to be done by the railroad company, who are to give notice in writing to the selectmen. It appears, in the present case, that this was done ; and it does not appear that any answer in writing was given ; or, if there was, it is in the hands of the respondents. But following the statutes, the next step is for the selectmen to give an answer in writing. Notice of what? their assent to, or, dissent from, the proposals of the railroad company? Not at all ; but notice of the alterations, if any, which they may require.

To this extent they have a right to prescribe. Can it be doubted, if the railroad corporation comply with such requisition, that they will thereby do their whole duty? Yet this would be no express agreement between the parties. It would be a requisition on the part of the party having power to prescribe, and obedience on the part of the party required to do something at his own expense for the public. It is only in case the parties shall not agree what alterations are necessary, that either party may appeal to the county commissioners.

Supposing, then, that the notice of the railroad company to the selectmen, that they propose to alter the grade of the highway, is a condition precedent, the respondents have done their whole duty, in this respect, by giving the notice ; unless the selectmen notify them what alterations they require, and the company fail to comply with their requisition, by altering the grade of the highway without making the required alterations, and without obtaining the order and decree of the commissioners. If the selectmen give no notice as to what alterations they require, the presumption is that they require none, but leave the whole matter to the company.

The third instruction to the jury, asked by the respondents, and refused by the sheriff, was, that if the selectmen neither authorized nor directed the making of the embankment, the railroad company were not liable for the damages to the abutters on the Winter Hill road.

The objection, founded on the refusal to give this instruc-

tion, is substantially answered by the considerations already suggested. The bridge and embankments on the highway were not built by the direction or the authority of the select-men ; but by the company under the authority of the statute. Selectmen have no negative voice. They have a voice in directing the mode in which the alterations shall be made, if they choose to raise it, in order that the accommodation of the public in highways, of which they are the guardians, may be insured ; and this is the extent and limit of their power.

The last ground taken by the respondents which we shall notice is, that the plaintiff has no remedy against the respondents, but if he has any, it is against the town, under Rev. Sts. c. 25, § 6.

It appears to us, that this ground is wholly untenable. The section referred to provides for a very different case. It is to this effect : When any one, who is the owner of land adjoining a highway or town way, shall sustain damage by raising or lowering, or other act done for the purpose of re-pairing such way, the owner shall have compensation there-for, to be determined by the selectmen, with a right of appealing to a jury. This statute relates to entirely different subjects, namely, the laying out, altering, repairing and im-proving town ways and highways. It is with reference to altering the grade for the purpose of repairing such way.

But in the case of railroads, the corporation is declared to be liable ; they have the power wholly independent of the au-thority of selectmen and county commissioners ; they are in terms charged with the expense ; they are to receive the ben-efit. The alteration, in the case before us, was not made for the purpose of repairing the Winter Hill road. By § 68, already cited, the selectmen had power to prescribe altera-tions, and, in case of a difference between them and the respondents relating thereto, to apply to the commissioners ; and then it is provided, that if the railroad company unneces-sarily neglect to make such alteration as the county com-missioners direct, the selectmen shall have the same remedies

as are prescribed for the recovery of damages caused by making such railroad.

Is not this a clear indication that the selectmen are to apply to the county commissioners, in the first instance, to assess their damages? The work is done by the company for their own benefit, and at their own expense; and we are of opinion, that whoever sustains an injury by it may obtain his damages in the mode prescribed for the recovery of damages for taking land or materials for a railroad.

The mode of recovering damages is clearly indicated by the fifty-sixth section. They are to be estimated by the commissioners, on application by either party, in the manner provided in the case of laying out highways; and, by § 57, either party may apply for a jury to assess the damages, and the same proceedings are to be had thereon as are prescribed in the twenty-fourth chapter, for recovering damages for laying out highways. This, of course, must apply to railroads, as nearly as practicable, but with such variations as the difference of the two cases may require.

In a case like this, the town would in no event be responsible, nor would the selectmen have any authority, and any application to them must be fruitless.

There is no analogy between this case and the case of *Currier* v. *Lowell*, 16 Pick. 170, which was for the recovery of damages, sustained by the plaintiff, in consequence of an excavation made by the Boston and Lowell Railroad Company in a highway, for the safety and sufficiency of which the town were still liable.

But the court are of opinion that the plaintiff is well entitled to recover; and supposing that the court of common pleas decided otherwise upon matters of law apparent on the record, the adjudication of that court, setting aside this verdict, must be reversed, and the verdict accepted.

---

The petitioner having moved for interest on the verdict, and also for costs, the opinion of the court was subsequently stated by

SHAW, C. J. In this case, the respondents prayed for a warrant for a jury, and to some small extent reduced the amount awarded by the commissioners.

Interest is to be allowed on the verdict; and the taxable costs of the appeal, as in the case of the Fitchburg Railroad Company against these respondents; but no costs for the warrant and jury.

A certificate is to be sent to the county commissioners, certifying the judgment of this court, that the adjudication of the court of common pleas setting aside the verdict returned in behalf of the petitioner be reversed, and judgment entered that the said verdict be accepted and affirmed, and that the county commissioners issue a warrant of distress to cause the same to be paid and satisfied.